## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JASON RITTEREISER and MITCHELL FAGUNDES, on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| GENERAL MOTORS, LLC, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................1

II.     THE PARTIES .....................................................................................2

        A.      Washington Plaintiff .................................................................2

        B.      California Plaintiff....................................................................3

        C.      The Defendant .........................................................................4

III.    JURISDICTION AND VENUE .............................................................5

IV.     FACTUAL ALLEGATIONS ..................................................................5

        A.      The Bearing Defect in the Class Vehicles...............................5

        B.      Background on Engine Bearings...............................................7

        C.      GM's Knowledge of the Bearing Defect ...............................12

                1.      GM's knowledge of the Bearing Defect from pre-
                        sale testing and publication to dealers. .....................12

                2.      GM's knowledge of the Bearing Defect from
                        complaints on the NHTSA website. ..........................14

                3.      GM's knowledge of the Bearing Defect from
                        complaints on third-party websites and forums.......39

                4.      GM's knowledge of the Bearing Defect from its
                        dealers and legal actions. ..........................................42

        D.      The Bearing Defect is a Material Fact that GM Failed to
                Disclose ..................................................................................44

V.      CLASS ACTION ALLEGATIONS.......................................................46

                1.      Washington Class.......................................................50

COUNT I: VIOLATION OF THE WASHINGTON CONSUMER
        PROTECTION ACT (Wash. Rev. Code § 19.86.010, *et seq.*) .....................50

2. California Class ..........................................................................54

COUNT II: VIOLATION OF THE CALIFORNIA  CONSUMER
LEGAL REMEDIES ACT (Cal. Civ. Code § 1750, *et seq.*) ........................54

COUNT III: VIOLATIONS OF THE CALIFORNIA UNFAIR
COMPETITION LAW (Cal. Bus. & Prof. Code § 17200) ..........................58

COUNT IV: VIOLATIONS OF CALIFORNIA FALSE
ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500,
et seq.) ...........................................................................................61

COUNT V: VIOLATION OF SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY UNDER
CALIFORNIA LAW (Cal. Civ. Code §§ 1791.1 & 1792) ..........................63

PRAYER FOR RELIEF ......................................................................67

JURY DEMAND ...............................................................................67

## I.     INTRODUCTION

1.      Plaintiffs bring this class action individually and on behalf of a Class of similarly situated individuals (referred to collectively as "Class Members") who purchased or leased specified models and years of General Motors ("GM") vehicles (the "Class Vehicles" as further defined herein), which are equipped with GM's L87 V8 engines. The Class Vehicles share a common defect regarding the bearings in their engines which are prone to, and have experienced failure, resulting in breaching of the engine block by the connecting rod and/or engine seizure (the "Bearing Defect").

2.      The Bearing Defect makes continued use of the Class Vehicles unsafe because drivers are unable to sense an issue with their engine prior to the engine failure occurring. This is particularly dangerous because the Bearing Defect results in a sudden loss of power of the vehicle, often while it is being driven at high speeds, thus significantly increasing the risk of a dangerous crash and/or injury. Plaintiffs and Class Members have therefore purchased or leased vehicles that subject them to serious risk.

3.      In addition to rendering the Class Vehicles unsafe to drive, the Bearing Defect significantly reduces the value of the Class Vehicles. And, if GM had disclosed the truth about the Bearing Defect, Plaintiffs would not have purchased their vehicles or would have paid less.

4.     As set forth herein, GM has known about the Bearing Defect for several years but failed to disclose it to Class Members prior to their purchases or leases of Class Vehicles.

5.     Moreover, simply replacing the defective engine with the same type of engine does not address the Bearing Defect and leaves consumers subject to the same undisclosed safety risk.

6.     GM's actions as alleged herein violate the Washington Consumer Protection statute, RCW §§ 19.86.010, *et seq.*, Washington Common Law, California Consumer Protection Laws and Common Law.

## II.     THE PARTIES

### A.     Washington Plaintiff

7.     Plaintiff and proposed class representative Jason Rittereiser ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Seattle, Washington. On or about August 31, 2022, Plaintiff purchased a new 2022 GMC Sierra 1500 from Brotherton GMC in Renton, Washington. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business's name, and it is used primarily for transportation needs such as household errands and to commute to and from work. Through exposure and interaction with GM, Plaintiff was aware of GM's uniform and pervasive marketing messages of dependability

and safety. These were the primary reasons Plaintiff purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicle, at no point did GM disclose the Bearing Defect to Plaintiff. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Bearing Defect. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Bearing Defect.

B.    **California Plaintiff**

8.    Plaintiff and proposed class representative Mitchell Fagundes ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Fresno, California. On or about December 30, 2022, Plaintiff purchased a 2022 Cadillac Escalade from Costa Mesa Cadillac in Costa Mesa, California. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business's name, and it is used primarily for transportation needs such as household errands and to commute to and from work. Through exposure and interaction with GM, Plaintiff was aware of GM's uniform and pervasive marketing messages of dependability and safety. These were the primary reasons Plaintiff purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicle, at no point did GM disclose the Bearing Defect to Plaintiff.

9.     On January 3, 2025, Plaintiff's Class Vehicle experienced catastrophic engine failure while he was on a road trip. Specifically, Plaintiff's Class Vehicle suddenly lost power while towing an empty trailer on Interstate 5 in California. Plaintiff was able to pull off to the side of the freeway and he was stranded on the side of Interstate 5 in the rain with very little space between the guardrail and the freeway where massive semi-trucks were going by. Plaintiff had the Class Vehicle towed to a GM dealership where the engine was eventually replaced.

10.    Prior to the engine failure, Plaintiff brought his Class Vehicle to the dealership for an oil change and complained that the vehicle was consuming more oil than it should. He was instructed to bring it in every 2000 miles to monitor it. In an abundance of caution, Plaintiff brought his Class Vehicle to the dealership just prior to the road trip where he experienced the engine failure and asked them to check the oil.

11.    Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Bearing Defect. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Bearing Defect.

**C.    The Defendant**

12.    Defendant General Motors, LLC is a citizen and resident of Michigan, which regularly does business all over the United States. GM is headquartered in

Delaware, and its principal office is located at 300 Renaissance Center, Detroit, Michigan 48265.

## III.   JURISDICTION AND VENUE

13.    This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

14.    This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Because Plaintiff and Defendant are citizens of different states, there is minimal diversity. The total claims of Class Members exceed $5,000,000 exclusive of interest and costs. There are at least 100 Class Members.

15.    The Court has personal jurisdiction over Defendant because it is headquartered in Michigan.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district and/or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.   FACTUAL ALLEGATIONS

### A.    The Bearing Defect in the Class Vehicles

17.    GM manufactures and sells several vehicle models with a L87 V8 engine, including the following vehicle models and years: 2019-2024 Chevrolet Silverado 1500; 2021-2024 Chevrolet Tahoe; 2021-2024 Chevrolet Suburban; 2019-2024 GMC Sierra 1500; 2021-2024 GMC Yukon; 2021-2024 GMC Yukon

XL; 2021-2024 Cadillac Escalade; and 2021-2024 Cadillac Escalade ESV (the "Class Vehicles").

18.     As has been reported to the National Highway Traffic Safety Administration ("NHTSA")[1] through numerous complaints and additional Early Warning Reporting Field Reports, Defendant's L87 V8 engine in the Class Vehicles have experienced and are overly susceptible to engine failure causing a loss of power resulting from a failure of the engine bearings.[2]

19.     The NHTSA summary states that "[t]he complainants report a bearing failure that may result in either engine seizure or breaching of the engine block by the connecting rod. The complainants report that there is no detectability prior to the failure." *Id.*

20.     "Failure or malfunction of the engine results in loss of motive power of the vehicle, which may lead to an increased risk of a crash resulting in injury and/or property damage." *Id.*

21.     According to the NHTSA, approximately 877,710 vehicles have the L87 V8 engine affected by this issue. *Id.*

---

[1] NHTSA is the federal agency responsible for keeping people safe on America's roadways. *See* https://www.nhtsa.gov/about-nhtsa (last accessed May 16, 2025).

[2] Exhibit 1, https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf (last accessed May 16, 2025).

**B.    Background on Engine Bearings**

22.    An engine bearing refers to the "main supports for the major moving parts of an engine" which "reinforc[e] the operating loads and reduc[e] the friction these parts generate."[3]

23.    The following image shows a sketch of engine bearings, in addition to an engine's connecting rod and crankshaft[4]:



24.    The following image from gmparts.com shows an engine crankshaft bearing set:[5]

---

[3] Exhibit 2, https://www.carparts.com/blog/what-are-engine-bearings-and-why-are-they-important/?srsltid=AfmBOooi4xbaeGRfGxpUsRmkDLFNrUNG8zVR-P9hvW4vHam6CElWjj3V (last accessed May 19, 2025).

[4] *See id.*

[5] Exhibit 3, https://parts.gmparts.com/product/gm-genuine-parts-engine-crankshaft-bearing-set-12591092 (last accessed May 19, 2025).



25.     Engine bearings are "critical to the operation and performance of the engine, and allow the rotating portions of the crankshaft, camshaft, connecting rods, and more to spin with minimal friction or damage. They must be able to withstand the extreme heat and pressures that build while an engine is running. Most engine bearings do not use any type of roller, instead they use a layer of oil between the faces of the two rotating surfaces."[6]

26.     An engine's connecting rod "provides the mechanical linkage between piston and crankshaft."[7] "Together with the crank, the connecting rod converts the

---

[6] Exhibit 4, https://www.oreillyauto.com/shop/b/bearings---seals/enginebearings/23d73b7c77fc (last accessed May 19, 2025).

[7] Exhibit 5, https://www.sciencedirect.com/topics/engineering/connecting-rods (last accessed May 16, 2025).

reciprocating motion of the piston into the rotation of the crankshaft."[8] An image of a connecting rod is shown on parts.gmc.com:[9]



27.    The engine's crankshaft "is a crank with a number of handles" and has "one crank throw for each piston and connecting rod."[10] "As the crankshaft rotates, it travels all the way to the bottom of the cylinder bore, with the connecting rod transferring that motion to the corresponding crank throw, which converts the piston's vertical movement into a rotational motion, all driven by the combustion events that happen in sequence in the cylinders above the pistons." *Id.* An image of a GM engine crankshaft is shown below:[11]

---

[8] Exhibit 6, https://www.theengineeringchoice.com/what-is-connecting-rod/ (last accessed May 16, 2025).

[9] Exhibit 7, https://parts.gmc.com/product/gm-genuine-parts-engine-connecting-rod-12648238 (last accessed May 16, 2025).

[10] Exhibit 8, https://www.carparts.com/blog/your-guide-to-understanding-the-basics-of-the-crankshaft-and-camshaft/ (last accessed May 19, 2025).

[11] Exhibit 9, https://parts.gmparts.com/product/gm-genuine-parts-engine-crankshaft-12691777 (last accessed May 16, 2025).



28.    A connecting rod bearing "is a type of engine bearing found at the junction of the connecting rod or piston rod and the crankshaft. Connecting rod bearings provide a smooth surface to interface with the crankshaft journal, allowing for smooth articulation of the piston through the path of its stroke. Also called rod bearings or engine rod bearings, the rod bearings are typically split into two halves, one of which presses into the connecting rod and the other in the rod cap."[12] The following is an image of a GM engine connecting rod bearing set:[13]

---

[12] Exhibit 10, https://www.oreillyauto.com/shop/b/engines---transmissions/connecting-rods-pistons---rings/connecting-rod-bearings/b58a286269b6 (last accessed May 19, 2025).

[13] Exhibit 11, https://parts.gmparts.com/product/gm-genuine-parts-engine-connecting-rod-bearing-set-12591093?bac=114504%2C234225%2C225875%2C114482%2C114506%2C215497%2C313408%2C318277%2C118738%2C116736%2C185302%2C320204%2C



29.    Further, "[c]onnecting rod bearings provide rotating motion of the crank pin within the connecting rod, which transmits cycling loads applied to the piston."[14]

30.    As set forth herein, the Class Vehicles have a common defect that endangers Class Members, passengers, and other drivers, as the defective engine bearings are prone to failure, resulting in sudden seizure of the engine. Such engine seizure, often occurring while the Class Vehicle is being driven at full speeds on the road, makes it extremely risky for Class Members to continue to drive their Class Vehicles. This is shown by the narratives of consumers set forth below,

---

168371%2C321014%2C290242%2C263716%2C199875%2C114511 (last accessed May 19, 2025).

[14] Exhibit 12, https://www.kingbearings.com/wp-content/uploads/2014/10/Engine-Bearings-and-how-they-work.pdf (last accessed May 16, 2025).

many of whom experienced sudden engine seizure while driving Class Vehicles at high speeds.

## C.    GM's Knowledge of the Bearing Defect

### 1.    GM's knowledge of the Bearing Defect from pre-sale testing and publication to dealers.

31.    On information and belief, GM performs rigorous pre-sale testing of its engine parts, including the engine bearing and the connecting rod. For example, on a webpage for the sale of Chevrolet parts, it states that "GM Genuine Parts Engine Connecting Rod Bearing Pairs are designed, engineered, and tested to rigorous standards, and are backed by General Motors. GM Genuine Parts are the true OE parts installed during the production of or validated by General Motors for GM vehicles."[15]

32.    Further, on information and belief, GM performs quality control specifically relating to its bearings.[16]

33.    Accordingly, based on its pre-sale testing of the relevant engine parts, GM was, and/or should have been aware of, the Bearing Defect.

---

[15] Exhibit 13, https://parts.chevrolet.com/product/gm-genuine-parts-engine-connecting-rod-bearing-set-19317286 (last accessed May 16, 2025).

[16] *See, e.g.*, Exhibit 14, https://www.caranddriver.com/news/a15368085/maliboom-faulty-connecting-rod-bearing-causing-engine-failures-in-gm-four-cylinders/ (last accessed May 16, 2025).

34.    Moreover, GM's knowledge of the Bearing Defect is specifically shown by an article it published on gm-techlink.com, a website GM maintains for the purpose of providing information and education to its dealers.[17]

35.    The March 24, 2023 article, entitled "V8 Engine Crankshaft Bearing Conditions," states that "[a] no crank condition may be found on some 2019-2023 Silverado, Sierra; 2021-2023 Tahoe, Suburban, Yukon and Escalade models equipped with the 6.2L V8 engine (RPO L87)."[18] It explains that the "no crank condition may be due to a seized engine with an open starter fuse. Various engine sounds, such as a thumping, knocking or rattling, may be present. These conditions may be the result of crankshaft bearing failure." *Id*.

36.    The article states that in cases of suspected bearing failure, "first check the engine oil and filter for excessive metal debris and bearing material." *Id*. It adds that "if bearing material is identified, remove the engine oil pan and inspect the crankshaft rod and main bearings for any damage. Component replacement or, depending on the extent of damage, engine replacement may be necessary." *Id*. It

---

[17] *See* Exhibit 15, https://gm-techlink.com/?page_id=445 ("All content is intended for General Motors dealer educational purposes only") (last accessed May 16, 2025).

[18] Exhibit 16, https://gm-techlink.com/?p=17349 (last accessed May 16, 2025).

further states that "[t]he amount of bearing damage determines if the engine should be replaced." [19]

37.     Additionally, GM states that "[i]f there is crankshaft main bearing failure, it may be necessary to also replace the oil cooler, oil cooler lines and oil tank, if equipped, along with the damaged engine components." *Id.*

38.     Accordingly, it is indisputable that GM has had knowledge of the Bearing Defect prior to March 24, 2023, the date it published the Tech Link with data about the Silverado, Sierra, Tahoe, Suburban, Yukon, and Escalade models.

39.     Further, as set forth below, GM was aware of the Bearing Defect through extensive consumer complaints on both the NHTSA Website and various third party websites and forums.

**2.     GM's knowledge of the Bearing Defect from complaints on the NHTSA website.**

40.     GM also had knowledge of the Bearing Defect based on consumer complaints on the NHTSA website.

41.     Upon information and belief, the NHTSA sent complaints it received about the Bearing Defect directly to GM.

---

[19] *Id.*

42.　　On information and belief, GM also monitors consumer complaints posted on the NHTSA website, as part of its obligation to report safety defects to the NHTSA.[20]

43.　　Complaints on the NHTSA may be monitored and searched by vehicle make, model, and year, and a search of the Class Vehicles yields numerous complaints regarding the Bearing Defect, as shown by the following overview:

44.　　A consumer from North Carolina wrote on December 16, 2021, regarding her 2021 Chevrolet Silverado 1500 that her local dealer found that "two rods had gone through the engine block and the engine needed to be replaced" and that "[t]he manufacturer was made aware of the failure."

---

[20] Exhibit 17, https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/mvdefectsand recalls808795.pdf (last accessed May 16, 2025).



45.     A consumer from Texas wrote on August 1, 2022, regarding her 2021 GMC Yukon that her dealership "found internal engine bearing material in oil indicating internal mechanical failure. Dealership removed engine oil pan and #1 and #2 connecting rods and found bearings spun causing catastrophic engine failure…. Dealership then followed bulletin #22-NA-074 for replacement of engine oil, cooler lines and engine oil cooler after connecting rod and main bearing damage."



46.     A consumer from New Hampshire wrote on December 27, 2023, regarding their 2023 Chevrolet Tahoe that their "Car completely died. Engine spun a bearing at 10,000 miles."



47.    Another consumer wrote on March 30, 2024, regarding their 2021 GMC Yukon that they had "[t]otal engine failure due to bearing issues in the bottom half of the engine."



48.    A consumer from South Carolina wrote on April 25, 2024, regarding their 2022 GMC Sierra 1500, that their dealer "diagnosed a failure with the rod bearings. The vehicle was repaired. The manufacturer was notified of the failure but provided no assistance."



49.    A consumer from Texas wrote on June 3, 2024, regarding their 2021 GMC Sierra 1500 that their dealer "confirmed a rod bearing failure."



50. A consumer from Michigan wrote on June 27, 2024, regarding their 2022 GMC Sierra 1500 limited that the crank bearing spun upon inspection by the dealer and that "[t]his is a known problem by the dealerships, GM & repair shops."



51.     A consumer from New Jersey wrote on September 11, 2024, regarding their 2021 GMC Sierra 1500 that a dealer suspected the crankshaft bearing had seized in their vehicle and that the manufacturer was notified.



52.   A consumer from Alabama wrote on December 13, 2024, regarding their 2020 Chevrolet Silverado 1500 that the "[m]ain bearing on crankshaft went out."



53.    A consumer from Michigan wrote on November 21, 2024, regarding their 2021 GMC Yukon that a repair facility found "[s]pun rod bearings on cylinders 1 and 2 damaged the crankshaft."



54.    A consumer from Texas wrote on January 14, 2025, regarding their 2022 Chevrolet Silverado 1500 that that a rod in the motor went through the engine block.



55.     A consumer from Michigan wrote on January 17, 2025, regarding their 2019 Chevrolet Silverado 1500 that the "[e]ngine failed and had to be replaced because of bearing failure."



56.     A consumer from Michigan wrote on January 17, 2025, regarding their 2023 Chevrolet Silverado that their GM dealership informed them "the thrust bearing went out which may have caused damage to the crankshaft."



57.     A consumer from Michigan wrote on January 17, 2025, regarding their 2024 GMC Sierra 1500 that engine bearing failure caused complete loss of power while driving and that the bearing failure was confirmed by the GM dealer.



58.     A consumer from Indiana wrote on January 17, 2025, regarding their 2022 GMC Yukon that after their engine failed on the highway with little children in the car, their dealer diagnosed "main crank thrust bearing failure."



59.     A consumer from Virginia wrote on January 17, 2025, regarding their 2021 GMC Yukon that technicians diagnosed a "spun rod bearing problem that is very common."



60.    A consumer from Texas wrote on January 18, 2025, regarding their 2021 Chevrolet Silverado 1500 that after their engine stopped working while driving on a highway, a Chevy dealer diagnosed that the bearings failed.



61. A consumer from Nevada wrote on January 18, 2025, regarding their 2022 Chevrolet Silverado that in March 2024 their vehicle suffered a "catastrophic main crankshaft bearing failure resulting in the vehicle losing power on a local highway."



62.     A consumer from Indiana wrote on January 18, 2025, regarding their 2024 Chevrolet Silverado 1500 that in April 2024 their vehicle "spun a bearing in the lower part of the engine after 1147 miles of use."



63.    A consumer from Oklahoma wrote on January 18, 2025, regarding their 2023 GMC Yukon that their engine failed because the "bearings couldn't get oil."



64.    A consumer from New Mexico wrote on January 18, 2025, regarding their 2023 GMC Yukon that, following their belief their vehicle had a defective connecting rod bearing, their local dealership "confirmed the engine was defective and would require replacement."



65.    A consumer wrote on January 18, 2025, regarding their 2021 GMC Yukon, that after their car went into neutral while driving next to an 18 wheeler with four children in the car, their dealer determined their vehicle "threw a rod and that the that the engine was broken and the whole engine would need to be replaced."



66.    A consumer wrote on January 19, 2025, regarding their 2021 Chevrolet Silverado 1500, that after their vehicle turned off on the freeway in June 2022, their dealership told them their vehicle "spun a bearing and threw two rods and needed a new engine."



67.     A consumer from Tennessee wrote on January 23, 2025, regarding their 2022 GMC Sierra 1500 that their vehicle was repaired at a GM dealer in November 2022 for a spun bearing.



68.     Additional recent complaints on the NHTSA website regarding the

Bearing Defect include the following:

- January 18, 2025 (2021 GMC Yukon)
- January 19, 2025 (2021 Chevrolet Silverado 1500)
- January 19, 2025 (2022 Chevrolet Silverado 1500)
- January 19, 2025 (2021 Chevrolet Silverado 1500) (bearing failure left driver stranded in middle of busy interstate)
- January 19, 2025 (2023 Chevrolet Silverado 1500)
- January 19, 2025 (2023 Chevrolet Tahoe) (thrown bearing caused vehicle to go to neutral while driving on five lane highway)
- January 19, 2025 (2019 GMC Sierra Limited 1500)
- January 19, 2025 (2021 GMC Sierra 1500) (rod bearing failure caused engine to seize and nearly caused accident and vehicle to go over cliff)
- January 19, 2025 (2022 GMC Sierra Limited 1500)

- January 19, 2025 (2022 GMC Yukon)
- January 19, 2025 (2023 GMC Yukon)
- January 19, 2025 (2023 GMC Yukon)
- January 20, 2025 (2023 Chevrolet Silverado 1500)
- January 20, 2025 (2021 Chevrolet Silverado 1500)
- January 20, 2025 (2022 Chevrolet Silverado 1500)
- January 20, 2025 (2022 GMC Sierra Limited 1500)
- January 20, 2025 (2022 GMC Sierra Limited 1500)
- January 20, 2025 (2023 GMC Yukon)
- January 20, 2025 (2023 GMC Yukon)
- January 21, 2025 (2020 Chevrolet Silverado 1500)
- January 21, 2025 (2023 Chevrolet Silverado 1500)
- January 21, 2025 (2022 Chevrolet Silverado 1500)
- January 21, 2025 (2024 Chevrolet Suburban)
- January 21, 2025 (2022 GMC Sierra Limited 1500)
- January 21, 2025 (2023 GMC Yukon)
- January 22, 2025 (2022 Chevrolet Silverado 1500)
- January 22, 2025 (2022 GMC Sierra Limited 1500)
- January 22, 2025 (2023 GMC Yukon)
- January 22, 2025 (2023 Cadillac Escalade) (bearing issue caused vehicle to shut down and stop on highway with family of 6 in car)
- January 22, 2025 (2021 Chevrolet Suburban) (engine seizure from main bearing failure left family stranded in middle of night for over seven hours)
- January 23, 2025 (2022 GMC Sierra Limited 1500)
- January 23, 2025 (2023 GMC Sierra Limited 1500)
- January 23, 2025 (2021 GMC Yukon)
- January 23, 2025 (2022 GMC Yukon)
- January 25, 2025 (2023 GMC Sierra Limited 1500)
- January 26, 2025 (2021 Chevrolet Tahoe)

- January 26, 2025 (2023 Chevrolet Tahoe)
- January 27, 2025 (2023 GMC Sierra Limited 1500)
- January 27, 2025 (2021 GMC Yukon)
- January 28, 2025 (2021 GMC Yukon)
- January 28, 2025 (2023 Chevrolet Silverado 1500)
- January 28, 2025 (2024 Chevrolet Silverado 1500)
- January 28, 2025 (2023 GMC Sierra 1500)
- January 28, 2025 (2024 GMC Sierra 1500)
- January 29, 2025 (2024 Cadillac Escalade)
- January 29, 2025 (2021 Chevrolet Silverado 1500) (dealer diagnosed failure of crankshaft bearings and connecting rod bearings on September 2024)
- January 29, 2025 (2023 Chevrolet Silverado 1500)
- January 29, 2025 (2023 Chevrolet Tahoe)
- January 29, 2025 (2023 Chevrolet Tahoe)
- January 29, 2025 (2024 Chevrolet Tahoe)
- January 29, 2025 (2023 GMC Sierra 1500) (bearings failure caused engine shut down while driving on highway with three children in vehicle)
- January 29, 2025 (2021 GMC Yukon)
- January 30, 2025 (2024 Chevrolet Silverado 1500)
- January 30, 2025 (2022 Chevrolet Suburban)
- January 30, 2025 (2022 GMC Sierra 1500)
- January 31, 2025 (2021 GMC Yukon)
- February 1, 2025 (2024 Chevrolet Silverado 1500)
- February 2, 2025 (2023 Chevrolet Tahoe)
- February 2, 2025 (2024 GMC Sierra 1500)
- February 3, 2025 (2021 GMC Yukon) (Chevrolet dealer diagnosed crank bearing failure in September 2023)
- February 6, 2025 (2022 Chevrolet Tahoe)

-38-

- February 7, 2025 (2019 GMC Sierra 1500)
- February 10, 2025 (2021 GMC Sierra 1500)
- February 10, 2025 (2023 GMC Sierra 1500)
- February 12, 2025 (2023 GMC Sierra 1500)
- February 13, 2025 (2023 GMC Sierra 1500)

69.    Further, there are at least 175 additional complaints on the NHTSA website involving Class Vehicles, that, although they do not specifically reference a bearing issue, refer to the common symptom of a Class Vehicle's engine seizing or locking up.

70.    Upon information and belief, consumers who submitted a complaint to NHTSA also took their Class Vehicles to GM dealers prior to submitting their complaints to NHTSA, and the dealers reported the issues to GM.

**3.    GM's knowledge of the Bearing Defect from complaints on third-party websites and forums.**

71.    GM's knowledge of the Bearing Defect is also evidenced by consumer complaints regarding the Bearing Defect on various online websites and forums, in which consumers have, for years, complained of the Bearing Defect.

72.    GM routinely monitors the internet for complaints about GM vehicles.

73.    Various consumer complaints about the Bearing Defect can be found online.

74.    On December 5, 2021, an owner of a 2021 Chevrolet Silverado posted on the website carcomplaints.com that his local dealer found that "two rods had

gone through the engine block and the engine needed to be replaced" and that

"[t]he manufacturer was made aware of the failure."[21]

75.     On March 8, 2023, a driver complained about a "Spun Crankshaft

Bearing" on his 2022 6.2L Yukon on the website tahoeyukonforum.com. He stated

that about three weeks prior, after his vehicle switched to neutral when he was

driving at 70 mph, his local dealership found that the crankshaft bearing had

spun.[22]

76.     On April 1, 2023, a driver of a 2022 Sierra 1500 complained about

"Main Bearing Fail" on the website silveradosierra.com.[23]

77.     On July 14, 2023, a driver of a 2023 Yukon posted on

tahoeyukonforum.com: "Spun Crankshaft Bearing Cause?" and stated that his

2023 Yukon died on May 6, 2023. He added that his dealer said there was a

"nationwide backlog for the 6.2L."[24]

---

[21] Exhibit 18,
https://www.carcomplaints.com/Chevrolet/Silverado_1500/2021/engine/
engine5.shtml (last accessed May 19, 2025).

[22] Exhibit 19, https://www.tahoeyukonforum.com/threads/2022-6-2l-yukon-spun-crankshaftbearing.140149/ (last accessed May 16, 2025).

[23] Exhibit 20, https://www.silveradosierra.com/threads/6-2-main-bearing-fail.752695/ (last accessed May 16, 2025).

[24] Exhibit 21, https://www.tahoeyukonforum.com/threads/spun-crankshaft-bearing-cause.142697/ (last accessed May 16, 2025).

78.   On February 26, 2024, a driver complained on the website tahoeyukonforum.com of "Main bearing failure" on his 2023 Yukon Denali, as he was informed by his dealer on or about February 26, 2024.[25]

79.   On March 4, 2024, a driver complained about "Main Bearing Failure with a 6.2L at 3,200 miles" on the website tahoeyukonforum.com, stating his local dealer determined his truck had a "spun bearing" and needed a new engine.[26]

80.   On March 27, 2024, a driver of a Yukon Denali stated on tahoeyukonforum.com that his "Denali 6.2 spun a rod bearing at 25k."[27]

81.   On December 12, 2024, a driver of a 2021 Yukon Denali stated on tahoeyukonforum.com that his vehicle "suffered a spun rod bearing at 44k miles," as he was informed by his GMC dealership on or about December 9, 2024.[28]

82.   Upon information and belief, and as referenced in many online comments, consumers who submitted complaints on third-party websites also took

---

[25] Exhibit 22, https://www.tahoeyukonforum.com/threads/main-bearing-failure-on-6-2l-for-me-ugh.146957/ (last accessed May 16, 2025).

[26] Exhibit 23, https://www.tahoeyukonforum.com/threads/main-bearing-failure-with-6-2l-at-3200-miles.147085/ (last accessed May 16, 2025).

[27] Exhibit 24, https://www.tahoeyukonforum.com/threads/stunned-denali-6-2-spun-a-rod-bearing-at-25k.147553/ (last accessed May 16, 2025).

[28] Exhibit 25, https://www.tahoeyukonforum.com/threads/spun-rod-bearing-2021-yukon-denali-6-2-l.151892/ (last accessed May 16, 2025).

their Class Vehicles to GM dealers at or around the time of their online complaints,

and the dealers reported the issues to GM.

**4.    GM's knowledge of the Bearing Defect from its dealers and legal actions.**

83.    GM also gained knowledge of the Bearing Defect from its dealers and

via legal actions involving Class Vehicles with the Bearing Defect.

84.    For example, in September 2024, Plaintiff took his vehicle to GM's

authorized dealer and told them of a rattling sound heard when accelerating.

85.    The next month, Plaintiff went back because his check engine light

was on and a knocking sound was coming from the engine. Upon examining the

oil, the dealer discovered metal in the oil. Upon further examination, the dealer

discovered the bearing and connecting rod had broken into many pieces damaging

the engine block.

86.    Upon information and belief, GM's authorized dealers report

information about the Bearing Defect, including Plaintiff's information, to GM.

87.    Legal actions filed by other consumers also demonstrate knowledge

by GM's authorized dealers and GM.

88.    For example, in *Sullivan v. General Motors*, 2:24-cv-02309 (E.D.

La.), filed on September 24, 2024, the plaintiff alleged that his 2023 Sierra 1500

had the Bearing Defect. He further alleges that GM's dealer made the following

notations:

> *Customer states there is a knocking sound coming from the engine. Found thrust bearing and crank discolored and rod bearing in pieces in oil pan. Found [truck's] oil is contaminated with metal.*[29]

89.     The plaintiff also alleges that he "directly notified [GM] of the defects, non-conformities, and conditions in the Vehicle."[30]

90.     In another online forum, a consumer with a 2021 Sierra complained in 2023 that he already had two blown engines after only 25,000 miles, with the most recent being because of spun bearings.[31] He described the incident as follows:

> I was on interstate in bumper to bumper traffic. All I did was take my foot off brake to start rolling. No warnings. Engine locked up and shut down. I'm on pace to have an engine replacement every 7-8 months. Third engine in 22 months.[32]

91.     On February 20, 2023, the consumer described the "official diagnosis," which, upon information and belief, came from a GM dealer: "#3 & 4 rod bearing spun & stacked, crankshaft journals damaged. Full engine replacement."[33]

---

[29] ECF No. 1, ¶ 9.

[30] *Id.* ¶ 11.

[31] Exhibit 26, https://www.silveradosierra.com/threads/2021-at4-25k-miles-two-blown-6-2-engines.751836/?post_id=7376211&nested_view=1&sortby=oldest#post-7376211 (user "Barnes53") (last accessed May 16, 2025).

[32] *Id.* (Feb. 20, 2023).

[33] *Id.*

92.     On February 28, 2023, the consumer indicated he had filed a legal action[34] and on May 2, 2023, he described a settlement: "GM finally settled out of court. They are buying the truck back and returning all payments along with collateral costs in addition to covering lawyer costs."[35]

93.     Upon information and belief, GM has had knowledge of the Bearing Defect because GM has been subject to other lawsuits or private arbitrations involving the Bearing Defect.

**D.     The Bearing Defect is a Material Fact that GM Failed to Disclose**

94.     Based on the above, GM has been aware of the Bearing Defect in the Class Vehicles since at least 2022, and likely prior to 2022.

95.     The existence of the Bearing Defect is a material fact, because a reasonable consumer would likely consider it important to know, when purchasing or leasing a vehicle, that the engine bearings may cause the engine to seize up and fail while driving, such that the driver, passenger, and other individuals in nearby vehicles are at substantial risk.

96.     Furthermore, the existence of the Bearing Defect is also a material fact because a reasonable consumer would likely be induced to change his or her

---

[34] *Id.*

[35] Exhibit 27, https://www.silveradosierra.com/threads/2021-at4-25k-miles-two-blown-6-2-engines.751836/page-2?nestedview=1&sortby=oldest (last accessed May 16, 2025).

decision to purchase or lease one of the Class Vehicles based on knowing that the engine bearings may cause the engine to seize up and fail while driving, such that the driver, passenger, and other individuals in nearby vehicles are at substantial risk.

97.    Although, as set forth herein, it has known about the Bearing Defect for several years, GM failed to inform Plaintiff and Class Members of the Bearing Defect prior to their purchases or leases of Class Vehicles.

98.    For example, despite having a webpage specifically entitled "Vehicle Safety," as set forth above, GM failed to make any disclosure relating to the Bearing Defect on this webpage.

99.    GM also did not make any disclosures relating to the Bearing Defect on any other easily accessible webpage relating to its Class Vehicles or components thereof.

100.    Nor did GM notify its dealers that they should inform potential purchasers of the Class Vehicles about the Bearing Defect prior to selling a vehicle.

101.    GM should have disclosed to consumers, and directed its dealers to disclose to consumers, the existence of the Bearing Defect in Class Vehicles.

102.    GM also had a duty to disclose the Bearing Defect because it presented a safety hazard to consumers.

103.   By failing to make adequate disclosures on its webpages or other materials provided to consumers, and by failing to direct its dealers to make these disclosures, GM prevented consumers from learning about the existence and nature of the Bearing Defect prior to their purchases or leases.

104.   As a result, GM obtained money from consumers through their purchases or leases of Class Vehicles in transactions in which Class Members lacked material information relevant to their purchases or leases.

105.   Plaintiff and Class Members have been damaged by GM's conduct and omissions because they purchased or leased a Class Vehicle of a quality different than promised and, in some instances, have been charged to make attempts to repair the Bearing Defect—though no adequate repair is currently known.

## V.   CLASS ACTION ALLEGATIONS

106.   **The Class.** Plaintiff brings this action on his own behalf and as a class action on behalf of all similarly-situated owners and lessees of Class Vehicles.

107.   Specifically, Plaintiff seeks to represent the following Classes:

> All persons who reside in Washington who, within the applicable period of limitations preceding the filing of this lawsuit to the date of class certification, purchased or leased a "Class Vehicle."
>
> (The "Washington Class")
>
> All persons who reside in California who, within the applicable period of limitations preceding the filing of this

lawsuit to the date of class certification, purchased or leased a "Class Vehicle."

(The "California Class")

108. A "Class Vehicle" is defined as a 2019-2024 Chevrolet Silverado 1500; 2021-2024 Chevrolet Tahoe; 2021-2024 Chevrolet Suburban; 2019-2024 GMC Sierra 1500; 2021-2024 GMC Yukon; 2021-2024 GMC Yukon XL; 2021-2024 Cadillac Escalade; or 2021-2024 Cadillac Escalade ESV.

109. Excluded from the Classes are officers, directors and employees of GM, counsel and members of the immediate families of counsel for Plaintiff herein, and the judge presiding over this action and any member of the judge's immediate family.

110. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4).

111. Plaintiff reserves the right to amend or modify the Class definitions and/or Class Vehicles with greater specificity or division into subclasses prior to class certification and after having had an opportunity to conduct discovery.

112. **Numerosity.** The members of each proposed Class are so numerous that joinder of all members is impracticable. Upon information and belief, the number of Class Vehicles exceeds 50,000. The precise number of Class Members is unknown at this time, as such information is in the exclusive control of GM and/or third parties.

113.   **Common Questions of Law and Fact and Predominance.**

Numerous questions of law and fact are common to Plaintiff and the Class Members, and predominate over any individual questions. Such common legal and factual questions include, but are not limited to:

a.   Whether GM sells or has sold vehicles that have the Bearing Defect described herein;

b.   When GM first learned of the Bearing Defect;

c.   Whether GM has omitted relevant information regarding the Bearing Defect from its communications with consumers prior to their purchases or leases;

d.   Whether and to what capacity GM is able to remedy the Bearing Defect;

e.   Whether GM's actions described herein are unfair, deceptive, or constitute an omission of a material fact under ICFA and the consumer protection laws of the states in the Consumer Fraud Multi-State Class;

f.   Whether GM's actions described herein are unethical;

g.   Whether Plaintiff and the Class Members are entitled to compensatory damages, and the amount of such damages based on GM's sale and/or lease of vehicles with the Bearing Defect;

h.   Whether injunctive and/or other equitable relief is warranted; and

i.   Whether Plaintiff and the Class Members are entitled to an award of punitive damages as permitted by the Illinois Consumer Fraud and Deceptive Business Practices Act and/or the consumer protection laws of the states in the Consumer Fraud Multi-State Class.

114.   **Typicality.** Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have suffered damages as a result of GM's unfair acts and omissions in failing to disclose the Bearing Defect prior to their purchases or leases of Class Vehicles.

115.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the proposed Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and consumer class actions.

116.   Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Classes, and do not have any interests that are contrary to or in conflict with those of the Classes they seek to represent.

117.   **Superiority.** A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

118.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action.

119.   Absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually and would have no

effective remedy at law through which to vindicate their claims against GM and be made whole.

120.    Class treatment will conserve the resources of the courts and the litigants, and further efficient adjudication of Class Member claims.

121.    **Class Action on Limited Issues.** Because there are common individual issues among the Class, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary.

    **1.    Washington Class**

**COUNT I:**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(Wash. Rev. Code § 19.86.010, *et seq.*)**
**(Alleged by Plaintiff on behalf of the Washington Class )**

122.    Plaintiff Rittereiser ("Plaintiff" for the purposes of this claim) and the Washington Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

123.    Plaintiff brings this action on behalf of himself and the Washington Class.

124.    GM committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.96.010.

125.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.96.010.

126.   In the course of its business, GM concealed the Bearing Defect in the Class Vehicles and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

127.   GM's actions described herein occurred in the conduct of trade or commerce, specifically the sale or lease of the Class Vehicles to Plaintiff and the Washington Class.

128.   By failing to disclose and by actively concealing the Bearing Defect in the Class Vehicles, which it marketed as safe, reliable, and of high quality, GM engaged in unfair and deceptive business practices in violation of the Washington CPA.

129.   The Bearing Defect would be material to a reasonable consumer, such as the Washington Class, and it is material to Plaintiff.

130.   GM's deceptive act or practices described herein concerning the

Bearing Defect, the Class Vehicles, and the nature of the recall repair were likely

to deceive or mislead a reasonable consumer acting reasonably under the

circumstances, such as Plaintiff and the Washington Class, and did in fact deceive

and mislead Plaintiff.

131.   GM failed to disclose material information about the Bearing Defect,

the recall repair and the Class Vehicles, which GM possessed and of which

consumers, like Plaintiff and the Washington Class, were unaware. GM's failure to

disclose this material information about the Bearing Defect and the Class Vehicles

was likely to deceive or mislead a reasonable consumer acting reasonably under

the circumstances, such as Plaintiff and the Washington Class, and did in fact

deceive and mislead Plaintiff.

132.   Plaintiff and the Washington Class members could not have

discovered the existence of the Bearing Defect, or GM's deception and

responsibility for the Bearing Defect, until shortly before this class action was

commenced.

133.   GM knew or should have known that its conduct violated the

Washington CPA.

134.   GM knew about the Bearing Defect affecting the Class Vehicles

owned or leased by Plaintiff and the Washington Class members based.

135.   As alleged above, GM made material statements about the safety and reliability of the Class Vehicles that were either false or misleading.

136.   GM owed Plaintiff and the Washington Class a duty to disclose the true safety and reliability of the Class Vehicles because GM:

     a.    Possessed exclusive knowledge about the risks of the Class Vehicles and the nature of the recall repair;

     b.    Intentionally concealed the foregoing from Plaintiff and the Washington Class;

     c.    Made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts from Plaintiff and the Washington Class that contradicted these representations; and/or

     d.    Had duties under the TREAD Act and related regulations to disclose and remedy the Bearing Defect well prior to the issue of its recall notices.

137.   GM's deceptive acts and practices alleged herein directly and proximately caused actual damages and an ascertainable monetary loss to Plaintiff and the Washington Class. Because GM omitted the metered information, Class Vehicle owners were deprived of the benefit of their bargain since the vehicles they purchased or leased were worth less than they would have been if they were free from the known serious safety defect. Had Class Vehicle owners been aware of the defect in their vehicles, they would either not have bought or leased their vehicles or would have paid less for them.

138.    GM's violations of the Washington CPA present continuing risk and harm to Plaintiff, the Washington Class, and the public. In particular and as alleged herein, GM has yet to provide an adequate fix for the defect. Furthermore, GM's "fix" raises additional safety concerns.

139.    GM is liable to Plaintiff and the Washington Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code § 19.86.090.

###### 2.    California Class

**COUNT II:**

**VIOLATION OF THE CALIFORNIA**
**CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(Alleged by Plaintiff on behalf of the California Class)**

140.    Plaintiff Fagundes ("Plaintiff" for the purposes of this claim) and the California Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

141.    Plaintiff brings this claim on behalf of himself and the California Class,

142.    GM is a "person" as defined in California Civil Code § 1761(c).

143.    Plaintiff and California Class members are "consumers" as defined in California Civil Code § 1761(d).

144.    GM engaged in unfair and deceptive acts in violation of the California Consumer Legal Remedies Act ("CLRA") through the practices described herein, and by omitting the Bearing Defect and misrepresenting and misleading Plaintiffs and the California Class about the Class Vehicles, along with omitting the risks, costs, and monetary damage resulting from the Bearing Defect and the inadequate recall repair. These acts and practices violate, at a minimum, the following sections of the CLRA: (a)(2) misrepresenting the source, sponsorship, approval, or certification of goods or services; (a)(5) representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which they do not have; (a)(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (a)(9) advertising goods and services with the intent not to sell them as advertised.

145.    GM's unfair and deceptive acts or practices occurred repeatedly in its trade or business, were capable of misleading a substantial portion of the purchasing public and imposed a serious safety risk on the public.

146.    GM knew or should have known that its conduct violated the CLRA.

147.    GM knew about the Bearing Defect affecting the Class Vehicles owned or leased by Plaintiff and California Class members based on (i) its own

pre-sale durability testing; (ii) the direct and public reports of engine failure causing a loss of power resulting from a failure of the engine bearings Class Vehicles; and (iii) GM's own investigation of the Bearing Defect in the Class Vehicles.

148.   GM knew that the recall repair it implemented did nothing to address the manufacturing flaw that causes the Bearing Defect affecting the Class Vehicles owned or leased by Plaintiff and California Class members.

149.   In the course of its business, GM violated the CLRA and engaged in deceptive acts or practices with the marketing and sale or lease of the Class Vehicles because it misrepresented and omitted material facts concerning the Class Vehicles, specifically the existence of the Bearing Defect, as alleged herein. GM omitted the fact of the Bearing Defect from Plaintiff and the California Class members. GM also misrepresented the safety, quality, functionality, and reliability of the Class Vehicles given the existence of the Bearing Defect in them. GM also misrepresented the efficacy and effectiveness of the recall repair it issued for the Class Vehicles.

150.   GM owed Plaintiff and the California Class a duty to disclose the true safety and reliability of the Class Vehicles and the adequacy of the recall repair because GM:

      a.   Possessed exclusive knowledge about the Bearing Defect and the nature of its recall repair;

b.    Omitted the foregoing from Plaintiff and the California Class;

c.    Made misleading and incomplete representations about the safety, quality, functionality, and reliability of the Class Vehicles, while withholding material facts from Plaintiff and the California Class that contradicted these representations; and/or

d.    Had duties under the TREAD Act and related regulations to disclose and remedy the Bearing Defect well prior to the issue of its recall notices.

151.    In failing to disclose the Bearing Defect and associated safety risks and repair costs that result from it, GM has misrepresented the Class Vehicles, omitted disclosure of the Bearing Defect, and breached its duty to disclose.

152.    The facts omitted and misrepresented by GM to Plaintiff and California Class members, as described herein, are material in that a reasonable consumer would have considered them important in deciding whether to purchase the Class Vehicles or to pay a lesser price. Had Plaintiff and California Class members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

153.    GM's violations of the CLRA present continuing risk and harm to Plaintiff, the California Class, and the public. In particular and as alleged herein, GM has yet to provide an adequate fix for the defective bearings. Furthermore, GM's "fix" raises additional safety concerns.

154.    On or about May 19, 2023, Plaintiff's undersigned counsel provided GM written notice of their violations of the CLRA under California Civil Code § 1782(a) regarding the Class Vehicles.

155.    Plaintiff and California Class members' injuries were proximately caused by GM's deceptive business practices.

156.    Plaintiff and California Class members seek all relief available under the CLRA, including equitable relief, damages, and attorneys' fees.

## COUNT III:

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200)
### (Alleged by Plaintiff on behalf of the California Class)

157.    Plaintiff ("Plaintiff" for the purposes of this claim) and the California Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

158.    Plaintiff brings this claim on behalf of himself and the California Class.

159.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

160.   In the course of its business, GM engaged in deceptive acts or practices with the marketing and sale or lease of the Class Vehicles because it misrepresented and omitted material facts concerning the Class Vehicles, specifically the existence of the Bearing Defect, as alleged herein. GM omitted the fact of the Bearing Defect from Plaintiff and California Class members. GM also misrepresented the safety, quality, functionality, and reliability of the Class Vehicles given the existence of the Bearing Defect in them. GM also misrepresented the efficacy and effectiveness of the recall repair of the Class Vehicles.

161.   GM engaged in unfair competition and unfair, unlawful, or fraudulent business practices through the conduct, statements, and omissions described herein, and by omitting the Bearing Defect in the Class Vehicles from Plaintiff and California Class members, along with omitting the risks, costs, and monetary damage resulting from the defect. GM should have disclosed this information because it was in a superior position to know the true facts related to the Bearing Defect, and Plaintiff and California Class members could not reasonably be expected to learn or discover the true facts related to the Bearing Defect.

162.   The Bearing Defect causes catastrophic engine failure in the Class Vehicles, and this constitutes a safety issue that triggered GM's duty to disclose the safety issue to consumers.

163.   GM's acts and practices misled and deceived Plaintiff and are likely to deceive the public. In failing to disclose the Bearing Defect and omitting other material facts from Plaintiff and California Class members, GM breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiff and California Class members. GM's omissions and misrepresentations concerned information that was material to Plaintiff and California Class members, as it would have been to all reasonable consumers.

164.   The injuries suffered by Plaintiff and California Class members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and California Class members could or should have reasonably avoided.

165.   GM's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313. GM knew or should have known its conduct violated the UCL.

166.   Plaintiff and California Class members have suffered an injury in fact, including the loss of money or property, because of GM's unfair, unlawful, and deceptive practices.

167.   Plaintiff seeks to enjoin further unlawful, unfair, and fraudulent acts or practices by GM, to obtain restitutionary disgorgement of all monies and

revenues generated because of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT IV:

### VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
#### (Cal. Bus. & Prof. Code § 17500, et seq.)
#### (Alleged by Plaintiff on behalf of the California Class)

168.    Plaintiff ("Plaintiff" for the purposes of this claim) and the California Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

169.    Plaintiff brings this claim on behalf of himself and the California Class.

170.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

171.   GM caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or through the exercise of reasonable care should have been known to GM, to be untrue and misleading to consumers, including Plaintiff and California Class members.

172.   GM violated Section 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles as described herein were material, untrue, and misleading, and likely to deceive a reasonable consumer.

173.   Plaintiff and California Class members have suffered an injury in fact, including the loss of money or property, because of GM's deceptive advertising. In purchasing or leasing their Class Vehicles, Plaintiff and California Class members relied on GM's misrepresentations and omissions regarding the safety, reliability, and functionality of the vehicles. GM's representations and omissions were untrue because the Class Vehicles were sold or leased with the Bearing Defect. Had Plaintiff and California Class members known this, they would not have purchased or leased their Class Vehicles or paid as much for them. Accordingly, Plaintiff and California Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

174.    All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of GM's business. GM's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

175.    Plaintiff, individually and on behalf of the California Class members, requests that this Court enter such orders or judgments as necessary to enjoin GM from continuing its unlawful and deceptive advertising, to restore to Plaintiff and California Class members any money GM acquired by its deceptive advertising, including restitution and restitutionary disgorgement, and for such other relief permitted.

## COUNT V:

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY
ACT FOR BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER CALIFORNIA LAW
(Cal. Civ. Code §§ 1791.1 & 1792)
(Alleged by Plaintiff on behalf of the California Class)**

176.    Plaintiff ("Plaintiff" for the purposes of this claim) and the California Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

177.    Plaintiff brings this claim on behalf of himself and the California Class.

178.   Plaintiff and California Class members are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

179.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

180.   GM is the "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

181.   GM impliedly warranted to Plaintiff and the California Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect and were therefore not merchantable.

182.   Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)   Pass without objection in the trade under the contract description.
>
> (2)   Are fit for the ordinary purposes for which such goods are used.
>
> (3)   Are adequately contained, packaged, and labeled.
>
> (4)   Conform to the promises or affirmations of fact made on the container or label.

The Class Vehicles were not merchantable when sold or leased because they are prone to a spontaneous and unreasonable risk of engine failure due to the Bearing

Defect described herein. Without limitation, the Class Vehicles share a common defect in that they are all equipped with the same defective bearings in their engines which are prone to, and have experienced failure, resulting in breaching of the engine block by the connecting rod and/or engine seizure. The Bearing Defect rendered the Class Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

183.   GM breached the implied warranty of merchantability by selling Class Vehicles containing a defect leading to engine failure during ordinary operating conditions. This defect has deprived Plaintiff and California Class members of the benefit of their bargain.

184.   Plaintiff and the California Class have had sufficient direct dealings with GM to establish privity of contract between them. Nonetheless, privity is not required here because Plaintiff and the California Class are intended third-party beneficiaries of contracts between GM and its dealers, and specifically, of GM's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers.

185.   Notice of breach is not required because Plaintiff and California Class members did not purchase their automobiles directly from GM.  Nonetheless,

Plaintiff's counsel sent notification to GM on or about May 16, 2023. In addition, Plaintiffs provided written notice on or about February 16, 2023, alerting GM to nationwide claims and other state-specific claims.

186.   Plaintiff and California Class members were and are third-party beneficiaries to GM's contracts with GM-certified/authorized retailers who sold or leased the Class Vehicles to Plaintiff and California Class members.

187.   As a direct and proximate result GM's breach of the implied warranty of merchantability, Plaintiff and California Class members received goods whose dangerous condition now renders them at least partially inoperable and substantially impairs their value. Plaintiff and California Class members have been damaged as they overpaid for their vehicles, and now suffer the partial or complete loss of use of their Class Vehicles.

188.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

189.   Under Cal. Civ. Code § 1794, Plaintiff and California Class members are entitled to costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, seeks the following relief:

A.    certification of the Classes pursuant Federal Rule 23;

B.    appointing Plaintiff as the Class Representative and Plaintiff's attorneys as Class Counsel;

C.    awarding Plaintiff and the Classes compensatory damages, in an amount to be proved at trial;

D.    awarding Plaintiff and the Classes injunctive relief as permitted by law or equity, including, but not limited to, enjoining GM from continuing the unlawful practices as set forth herein and ordering GM to engage in a corrective advertising campaign, and to take other corrective action such as the creation of an inspection program and the installation of non-defective engines;

E.    awarding pre-judgment and post-judgment interest;

F.    awarding attorneys' fees and costs; and

G.    providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

DATED: May 19, 2025                    Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
   Steve W. Berman
   Shelby R. Smith
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
shelbys@hbsslaw.com

E. Powell Miller
Dennis A. Lienhardt, Jr.
**MILLER LAW**
50 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 963-6593
epm@millerlawpc.com
dal@millerlawpc.com

*Attorneys for Plaintiffs*